Vanessa Waldref
United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:23-CR-6014-SAB |
| Plaintiff, | |
| v. | Briefing Re: BNL Plea Agreement |
| BNL TECHNICAL SERVICES LLC, | |
| Defendant. | |

Plaintiff, United States of America, by and through Vanessa Waldref, United States Attorney for the Eastern District of Washington, and Tyler H.L. Tornabene, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the United States' Briefing Re: BNL Plea Agreement.

**I.  Summary**

**A. Procedural History**

The Defendants were indicted on April 18, 2023, with multiple fraud charges all stemming from allegations that the Defendants, BNL Technical Services LLC ("BNL") and its sole owner and operator Wilson Pershing Stevenson III ("Stevenson"), received Paycheck Protection Program ("PPP") loan forgiveness based on false statements that BNL had used the PPP loan proceeds for payroll and other authorized business expenses when in fact it had not. (ECF No. 1). On

U.S. Briefing Re: BNL Plea Agreement - 1

March 21, 2024, this Court issued its Scheduling Order which, *inter alia*, set deadlines for the parties' expert disclosures and scheduled trial for September 30, 2024. (ECF No. 48). Between April 29, 2024, and May 28, 2024, the United States filed four expert notices. (ECF Nos. 51, 52, 54, and 55). On August 1, 2024, at the parties' requested this Court set a change of plea hearing for August 27, 2024. (ECF No. 60). At the change of plea hearing the Court advised the parties that it was not yet willing to accept the proposed BNL plea agreement and ordered briefing on specific questions and issues related to the proposed plea agreement and overall resolution of the case. (*See* ECF Nos. 63 and 64).

Consequently, the United States now files the instant briefing in advance of the October 22, 2024, status conference in order to address the questions and issues raised by the Court. For the reasons detailed herein, the United States requests, and the Defendants have represented their concurrence, that this Court accept the proposed BNL plea agreement and allow BNL to enter a plea of guilty to Count 8 of the Indictment on October 22, 2024.

### B. Relevant Facts

As alleged in the Indictment and as stated in the proposed plea agreement,[1] between April 13, 2020, and August 5, 2021, BNL was a staff augmentation company primarily providing leased staff to certain U.S. Department of Energy ("DOE") prime contractors at the Hanford Nuclear Site. As such, BNL's payroll was paid with DOE funds, through the various prime contractors, for nearly all of its employees including those that were not able to work due to the COVID-19 pandemic. Nonetheless, BNL applied for and received a PPP loan for $493,865 supposedly to cover payroll costs and other authorized business expenses. Upon

---

[1] The previously signed plea agreement is attached hereto as Exhibit 1 for ease of reference.

U.S. Briefing Re: BNL Plea Agreement - 2

receiving the funds BNL did not use them for its payroll, because it was already directly covered by other federal funds, primarily DOE through its prime contractors, and instead used the money on unauthorized expenses such as pre-existing debt.  Subsequently, on December 2, 2020, BNL fraudulently requested forgiveness of the full PPP loan amount and falsely stated that the loan proceeds had been used for payroll and other authorized business expenses when in fact it had not done so.  Subsequently, BNL applied for and obtained a second PPP loan and used a portion of those funds for non-qualifying business expenses, including paying off a previously obtained Economic Injury and Disaster Loan ("EIDL") from the Small Business Administration ("SBA").

      Starting in approximately early 2021, BNL began to shift its business away from staff augmentation for DOE prime contractors at Hanford and began doing more non-federal business in Tennessee.  In addition, in 2021, BNL began reducing its overall business operations.  On March 31, 2022, prior to the Defendants having any knowledge of the criminal investigation that ultimately led to the instant Indictment, BNL, a Washington State limited liability company, was voluntarily dissolved in Washington State.

      After the Indictment and after the United States' expert notices were filed, the United States and the Defendants attempted to negotiate a resolution to the pending charges.  During the course of those negotiations the Defendants, through counsel of record, requested a global criminal and civil resolution that could resolve all criminal liability for the Defendants stemming from the conduct alleged in the Indictment as well as all civil fraud liability arising from that same conduct under the False Claims Act, 31 U.S.C. § 3729 *et seq*.  The United States agreed to provide a global resolution offer and ultimately the parties reached a global criminal-civil fraud resolution that envisioned, *inter alia*:

U.S. Briefing Re: BNL Plea Agreement - 3

    1) BNL pleading guilty to Count 8 of the Indictment, Bank Fraud, and paying $493,865 in restitution to the SBA, the full amount of the first PPP loan; and

    2) Stevenson entering into a False Claims Act settlement, which includes agreeing to certain factual statements and to pay a total settlement amount of $1,105,498, with anticipated credit for the $493,865 restitution payment by BNL pursuant to the proposed plea agreement, resulting in a payment by Stevenson of $611,633.

Under this proposed resolution the Defendants would be agreeing to pay a total of $1,105,498. In addition, under this proposed resolution, BNL would be agreeing to the material facts charged in the Indictment making it guilty of committing Bank Fraud as part of the charged scheme and Stevenson would also be agreeing to the following facts, among others, as stated in the proposed False Claims Act ("FCA") settlement agreement[2]:

- that on or about April 13, 2020, despite knowing that BNL was in fact receiving its staff augmentation payroll funds from DOE, through its DOE prime contractors, Stevenson, on behalf of BNL, signed and submitted an application for a PPP loan in the amount of $493,865;
- that the application for that PPP loan improperly calculated the payroll costs based on the payroll costs for BNL staff augmentation employees whose payroll was already being fully reimbursed by, among others, DOE through its prime contractors;
- that as a result the PPP loan was approved and $493,865 was disbursed to BNL;

---

[2] The False Claims Act Settlement Agreement is attached hereto as Exhibit 2.

U.S. Briefing Re: BNL Plea Agreement - 4

- that the representations made by Stevenson in the PPP loan application were materially false;
- that on or about December 2, 2020, Stevenson, on behalf of BNL, requested forgiveness of the entire PPP loan amount of $493,865, by certifying that the loan proceeds had been used for BNL payroll and other eligible uses and business expenses when they had not;
- that in January 2021, Stevenson, on behalf of BNL applied for a "second draw" PPP loan in the amount of $819,647.50, which was approved and disbursed to BNL;
- that BNL used a portion of the second draw PPP loan amount for non-qualifying business expenses, including paying off an EIDL obtained by BNL, which was not an eligible PPP expense; and
- that Stevenson, on behalf of BNL, nonetheless applied for, and was subsequently granted, forgiveness for the full PPP amount, including the amounts used for non-qualifying business expenses.

II. **Discussion**

The Court has expressed concerns regarding the proposed BNL plea agreement and the corresponding dismissal of counts in the Indictment, including all counts against Stevenson, should the Court accept the plea agreement. The United States will attempt to answer the Court's concerns by directly addressing its specified questions from the last hearing, both in the instant briefing and at the upcoming scheduled hearing. At bottom, however, it appears that the Court is most concerned with whether the contemplated resolution is in the best interest of the public and fully addresses the conduct at issue. The United States is somewhat constrained in the information it can provide to the judiciary regarding its internal assessment of any case, its deliberative process, and the details of its negotiations with any defendant. Nonetheless, the United States will attempt to provide the

U.S. Briefing Re: BNL Plea Agreement - 5

Court additional information and insight in order to provide a more complete view of the global criminal-civil fraud resolution contemplated by the parties. It is the position of the United States that the contemplated global resolution is a just one, that it is comparable to other resolutions reached in this District and elsewhere in similar cases, and that it provides for appropriate public accountability for Stevenson and ensures that neither he nor his company receive any financial benefit whatsoever from the charged conduct.

### A. The Plea Agreement Accurately States the Statutory Maximum Penalty for Bank Fraud

This Court has asked for briefing on the accuracy of the maximum length of the term of probation as stated in the proposed plea agreement. The maximum term of probation for a defendant convicted of a felony is five years. 18 U.S.C. § 3561(c)(1). While a term of probation is not authorized for an individual convicted of a Class A or Class B felony or other disqualifying conditions not applicable here, the statute does allow for a term of probation of up to five years for a corporation. *See* 18 U.S.C. § 3561(a). Accordingly, the statutory maximum term of probation applicable to BNL for a plea of guilty to 18 U.S.C. § 1344(1) and (2), Bank Fraud, is five years.

### B. Even as a Dissolved Corporation, BNL Can Lawfully Be Charged with a Federal Crime and Plead Guilty

The Court has raised concerns regarding the lawfulness of a dissolved corporation being indicted with a federal crime and being able to plead guilty to any such federal crime. To determine whether a dissolved corporation can be federally indicted, the federal courts should defer to the laws of the state where the corporation was incorporated. *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 272-74 (1959) (holding that the state statutes continued the existence of dissolved corporations to such an extent as to permit a federal indictment for violations of the Sherman Act when the statutes provided that 'proceedings' could

U.S. Briefing Re: BNL Plea Agreement - 6

be continued against a corporation after its dissolution.). A statute does not have to explicitly state that a dissolved corporation may be federally indicted. *United States v. San Diego Grocers Ass'n, Inc.*, 177 F. Supp. 352, 353-55 (S.D. Cal. 1959); *Melrose*, 359 U.S. at 273-74. As long as a statute states that proceedings or actions may be brought against a dissolved corporation, a dissolved corporation may be federally indicted. *San Diego Grocers*, 177 F. Supp. at 353-55; *Melrose*, 359 U.S. at 273-74. Moreover, if the laws of a state continue a corporation in existence for the purpose of defending 'proceedings' or 'actions,' regardless of how narrowly state courts may interpret this word, the 'existence' which is continued is sufficient for the corporation to be indicted by the federal government. *See San Diego Grocers*, 177 F. Supp. 352 at 354 (stating that states cannot allow corporations to continue existing for some purposes but, at the same time, be immunized from prosecution by the federal government); see also *Def. Supplies Corp. v. Lawrence Warehouse Co.*, 336 U.S. 631, 635-36 (1949) (holding that a corporation may be dead for most purposes yet have enough life to litigate actions).

BNL can be, and has been, federally indicted with, *inter alia*, a violation of 18 U.S.C. §1344(1) and (2), Bank Fraud. In *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, the Supreme Court addressed a scenario where two corporations, one incorporated in Maryland and the other in Delaware, were dissolved shortly after being federally indicted for violations of the Sherman Act. *Melrose*, 359 U.S. at 271. The Court reasoned that the question, whether a corporation exists for any reason, is determined by reference to state law. *Id*. at 272. So, the Court looked at the statutes of Maryland and Delaware. *Id*. at 272-73. The Maryland statute provided that dissolution shall not 'abate any pending suit or proceeding by or against the corporation.' *Id*. at 273. The Delaware statute stated that any 'proceeding' begun by or against a corporation before or within three

U.S. Briefing Re: BNL Plea Agreement - 7

years after dissolution shall continue. *Id*. The Court reasoned that, no matter how the state courts may construe the statutes or the terms, the normal construction of the term 'proceeding' includes criminal prosecution. *Id*. at 273-74. So, the Court reasoned that the term 'proceeding' in the Maryland and Delaware statutes implies enough vitality to make the dissolved corporation an existing enterprise for the purposes of the Sherman Act. *Id*. Thus, the corporations could be federally indicted. *Id*.

     Similarly, in *San Diego Grocers* the Southern District of California held that criminal prosecutions for violation of antitrust laws could be maintained against a corporation which had completed its dissolution at the time it was indicted. *San Diego Grocers*, 177 F. Supp. 352 at 355. In that case, Will-Free, Inc., a corporation incorporated in California, was federally indicted on June 5, 1959, for conspiring to restrain trade in violation of Section 1 of the Sherman Act. *Id*. at 352-53. However, in May 1959, a month before the corporation was federally indicted, Will-Free, Inc. had completed its formal dissolution under the laws of the State of California. *Id*. at 353. The court looked at the pertinent sections of the California law and found two laws stating that after its dissolution, a corporation 'nevertheless continues to exist for the purpose of prosecuting and defending actions by or against it.' *Id*. The court in *San Diego Grocers* relied on *Melrose* to hold that a state cannot continue the existence of one of its corporations and at the same time immunize it against federal criminal prosecution. *Id*. at 355. Hence, the court reasoned, even if California interpreted the statutes or the word 'action' to include only civil actions, this limitation would apply only with reference to preventing criminal prosecution under State law and would not preclude prosecutions under the federal law. *Id*. Accordingly, the court in *San Diego Grocers* concluded that Will-Free, Inc. could be federally indicted even after its dissolution. *Id*., *see also BBF Liquidating*. *United States v. BBF Liquidating, Inc.*,

U.S. Briefing Re: BNL Plea Agreement - 8

450 F.2d 938, 938 (9th Cir. 1971) (applying and following the reasoning in *San Diego Grocers*).

Moreover, the court in *San Diego Grocers* rejected the defense argument that it should follow the Tenth Circuit's decision in *United States v. Safeway Store*, where that court concluded that a similar statute continued the existence of a corporation only for civil and not criminal actions. *Id*. at 354; *United States v. Safeway Stores, Tex*., 140 F.2d 834, 838-839 (10th Cir. 1944). In rejecting the Tenth Circuit's reasoning in *United States v. Safeway Store*, the court in *San Diego Grocers* reasoned that the word "action" should not be construed to apply only to civil cases and that the statutes of California clearly use the word 'action' to refer to criminal prosecutions. *Id*. Thus, the court continued, the California statute continued the existence of a dissolved corporation to such an extent as to permit federal indictments. *Id*. Therefore, the court concluded, Will-Free, Inc. could be federally indicted even after its dissolution. *Id.*

Like the corporation in *San Diego Grocers* and in *Melrose*, BNL was federally indicted after its dissolution. BNL was voluntarily dissolved on March 31, 2022, prior to BNL or Stevenson learning of the criminal investigation. About one year later, on April 18, 2023, BNL was federally indicted on multiple charges, including a violation of 18 U.S.C. § 1344(1) and (2), Bank Fraud. Since BNL is incorporated in Washington state, the law of Washington governs BNL's ability to be sued and charged with a crime. Wash. Rev. Code § 23B.14.050 states that a "dissolution of a corporation does not prevent commencement of a 'proceeding' by or against the corporation in its corporate name." Wash. Rev. Code § 23B.14.050. Moreover, RCW 24.06.335 states that the "dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, for any right or claim existing, or any liability incurred, prior to such dissolution if action

U.S. Briefing Re: BNL Plea Agreement - 9

or other proceeding thereon is commenced within two years from the date of dissolution." RCW 24.06.335.

Just like the statutes in *San Diego Grocers* and in *Melrose*, the Washington statutes use the terms "proceedings" and "actions." As detailed above, these terms have been held to refer to federal criminal prosecutions and therefore support the existence of a dissolved Washington corporation to be federally indicted. Moreover, like in *San Diego Grocers*, where the court, applying California law, found that the term "action" to include criminal prosecutions because California law clearly uses the word "action" to refer to criminal prosecutions, the statutes of Washington also use the terms "actions" and "proceedings" to refer to criminal prosecutions. *See e.*g. RCW § 10.37.010; RCW § 10.37.140; RCW § 9A.82.100 (1)(b); RCW § 9A.82.100(6). Consequently, the Washington statutes permit the federal indictment of dissolved corporations.

Furthermore, RCW 24.06.335 sets a time limit of two years from dissolution for the commencement of any "action" or "proceeding," which under *Melrose* and *San Diego Grocers* would include a federal criminal prosecution, to commence after a corporation has been dissolved. Since BNL was indicted within that two-year limit, criminal charges, state or federal, against BNL are lawful and appropriate. Therefore, BNL has been properly charged with, and can lawfully plead guilty to, a violation of 18 U.S.C. § 1344(1) and (2).

Likewise, the holdings in *Melrose* and *San Diego Grocers* as well as the statutory language in Washington that "dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years from the date of dissolution," RCW 24.06.335, supports the conclusion that BNL can be federal charged with and plead guilty to a crime regarding conduct it engaged in prior to

U.S. Briefing Re: BNL Plea Agreement - 10

dissolution, where, as here the indictment for that conduct is brought within two years of dissolution.³

### C. Stevenson is Empowered to Plead Guilty on behalf of BNL

The Court has raised questions regarding how BNL would plead guilty and the corporate authority of Stevenson. (ECF No. 63). The defense has provided briefing on this subject, at ECF No. 57, which the United States has reviewed and concurs with regarding Stevenson's corporate authority. Specifically, Stevenson has been and remains the sole owner and governor of BNL. (*See* ECF NO. 57 at 3). Based on the above analysis from, *inter alia*, the Court in *Melrose* showing that BNL can be charged with a federal crime for conduct occurring prior to its dissolution, and brought within two years of its dissolution, it follows that Stevenson, who remains BNL's sole owner and governor, continues to have the corporate authority to enter into the BNL plea agreement on behalf of BNL.

### D. The Global Resolution Agreed to By the Parties is Just

Fundamentally, the Court has raised the issue of whether the proposed resolution is a just one. Specifically, the Court has asked whether there is any societal value in putting a dissolved corporation on probation. However, as detailed herein, the proposed global criminal-civil fraud resolution provides more

---

³ BNL was also registered as a foreign corporation in Tennessee. However, even if the *Melrose* analysis were done using Tennessee law instead of Washington law, the same result obtains. Tenn. Code § 48-24-10 states that "Dissolution of a corporation does not prevent commencement of a proceeding by or against the corporation in its corporate name or abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution." Tenn. Code § 48-24-10. Since the statute is very similar to the ones in *Melrose*, a dissolved Tennessee corporation can also be federally charged and plead guilty to that charge.

U.S. Briefing Re: BNL Plea Agreement - 11

accountability to BNL and Stevenson than probation, including full restitution to the United States and additional damages for a total of defense payment of $1,105,498, which is in far in excess of the provable loss of between $493,865 (the full value of the first PPP loan) and $643,865 (the full value of the first PPP loan plus the $150,000 of the second PPP loan used to pay off the EIDL).  Moreover, between the proposed plea agreement and the Stevenson FCA settlement, the public will be provided with factual admissions, including from Stevenson himself, regarding the fraud.  As detailed below, this global resolution is very much in line with, and a bit harsher than, similarly situated COVID-19 fraud cases both in this District and nationwide.

      For instance, in 2022, in this District, the United States entered into a global criminal and civil fraud resolution with another DOE Hanford contractor, HPM Corporation ("HPMC") and its owners Holly and Grover Cleveland Mooers for their admitted knowing provision of materially false statements to the SBA for PPP loan forgiveness, specifically that they had used the funds for payroll when in fact they had not and which resulted in their fraudulently obtaining over $1.3 million.  *See* Exhibit 3 (HPMC Deferred Prosecution Agreement) and Exhibit 4 (Mooers FCA Settlement Agreement); *see also* Press Release, U.S. Dep't of Justice, *HPM Corporation and Owners Accept Responsibility, Agree To Pay Nearly $3 Million In Restitution and Penalties For Fraudulent Covid-19 Relief Loan* (March 25, 2022), https://www.justice.gov/usao-edwa/pr/hpm-corporation-and-owners-accept-responsibility-agree-pay-nearly-3-million-restituti-0 ("HPMC Press Release").  In that case, HPMC and its owners applied for a PPP loan stating that the funds would be used to pay eligible business costs.  *Id*.  After receiving a $1.3 million loan, HPMC submitted a PPP Loan Forgiveness Application claiming that the funds were used to "pay business costs that are eligible for forgiveness."  As a result, HPMC received forgiveness of the loan.  *Id*.  However, the funds were never

U.S. Briefing Re: BNL Plea Agreement - 12

actually used for eligible business expenses. *Id*. Instead, they were transferred from an HPMC business account to HPMC's owner's personal bank account. *Id*.

As part of the global criminal-civil fraud resolution, HPMC agreed to pay $1,344,700 in restitution and an additional $1,344,700 in penalties and the Mooers agreed to pay $250,000. *See* Exhibit 4. The total agreed upon payment was almost $3 million. *Id*. Moreover, the resolution had a criminal component, a Deferred Prosecution Agreement, where the government agreed to dismiss criminal charges if HPMC remained on probation for three years and fulfilled its agreed upon obligations. *See* Exhibit 5 and HPMC Press Release.

The HPMC global criminal and civil fraud resolution is very similar to the resolution in this case. Both HPMC and BNL were DOE contractors at Hanford during their relevant conduct, and both obtained PPP loan forgiveness fraudulently. Although HPMC obtained more money by defrauding PPP than BNL did the criminal component of the HPMC global resolution was more lenient than BNL's as HPMC was allowed to agree to a deferred prosecution while BNL has agreed to plead guilty to bank fraud. Consequently, unlike BNL, whose contemplated guilty plea will result in a criminal conviction, HPMC has the ability to have its criminal charges dismissed as part of the agreement. In addition, as part of the global resolution in HPMC, the owners- Mr. and Mrs. Mooers- were only required to pay $250,000, while here the culpable owner, Stevenson, has to pay over $600,000. Despite the similar conduct of the two corporations and their respective owners, the fair but more lenient global criminal-civil fraud resolution in HPMC was allowed to proceed, which specifically included the court in that case allowing the deferred prosecution agreement to move forward.

The proposed global criminal-civil fraud resolution in this case is also more onerous on the defense as compared to other similar corporate COVID-19 related fraud resolutions around the country. For instance, in the Central District of

U.S. Briefing Re: BNL Plea Agreement - 13

California a fraud resolution was recently reached between West Coast Dental Administrative Services LLC (hereinafter "West Coast Dental") and the United States.  Press Release, U.S. Dep't of Justice, *Southern California Dental Offices and Former Owners Pay $6.3M to Resolve False Claims Act Allegations Relating to Improper Paycheck Protection Program Loans* (August 8, 2024), https://www.justice.gov/opa/pr/southern-california-dental-offices-and-former-owners-pay-63m-resolve-false-claims-act.   In that resolution, like in the BNL resolution, the United States alleged that West Coast Dental received PPP loans fraudulently.  *Id*.  They alleged that West Coast Dental applied for a second draw PPP loan despite being ineligible as they had over 300 employees and made false statements and representations in connection with seven different loans.  *Id*.  The total amount of all seven fraudulently obtained loans was over $4 million.  *Id*.  The United States' theory of the case, that West Coast Dental simply lied about the number of their employees, was very straightforward as compared to the more complex fraud at issue in this case, requiring multiple government experts.  *See id*.  Nevertheless, despite the straightforward theory of fraud and the very large amount of money that was taken, there was no criminal component in the resolution at all with the only substantive requirement of the resolution being that the West Coast Dental's pay a settlement amount of approximately $6.3 million.  *Id*.  Although the West Coast Dental resolution resulted in a higher dollar recovery for the United States, global resolution here requires the Defendants to pay more than double the amount of funds they took, while West Coast Dental only agreed to pay about 1.5 times the amount of money it took.  *Id*.  Moreover, while BNL is set to plead guilty and make many factual admissions along with the factual admissions by Stevenson individually in the FCA Settlement, neither West Coast Dental nor its owner(s) were required to make any factual admissions as part of that civil only resolution.  *Id*.

U.S. Briefing Re: BNL Plea Agreement - 14

Another resolution of a comparable case comes from the Central District of California and was between a law firm, the Bloom firm, and the United States. *See* Press Release, U.S. Dep't of Justice, *Calabasas Law Firm and Senior Managers Settle False Claims Act Allegations Regarding Misuse of COVID-19 Business Loan Funds* (August 15, 2024), https://www.justice.gov/usao-cdca/pr/calabasas-law-firm-and-senior-managers-settle-false-claims-act-allegations-regarding. The United States alleged that the Bloom Firm sought and obtained forgiveness of the firm's first draw PPP loan by falsely certifying that the firm used the PPP loan funds for eligible payroll expenses. *Id*. The United States also alleged that the firm used a portion of its PPP loan to pay several employees who were ineligible to receive PPP funds or did not work for the firm during the covered period of the loan. *Id*. The civil component of the resolution in Bloom was very similar to the civil component of the proposed resolution here, however, unlike the proposed global resolution here, the Bloom Firm's resolution had no criminal component,. *Id*. In its resolution, the Bloom Firm agreed to pay $204,200.34 and two members of Bloom Firm's senior management agreed to each pay $35,384.49. *Id*. Again, in this case the culpable individual is paying the majority of the total amount to the United States, over $600,000. Further, the resolution in the Bloom Firm case contained no factual admissions of any kind, wholly unlike the global criminal-civil fraud resolution here which has robust factual admissions by both the corporate entity and the culpable individual.

Furthermore, there are also similar resolutions for COVID-19 fraud unrelated to PPP loans. For example, the United Staes in the District of New Jersey recently entered into a resolution with a group of companies operating together under the name CityMD. *See* Press Release, U.S. Dep't of Justice, *CityMD Agrees to Pay Over $12M for Alleged False Claims to the COVID-19 Uninsured Program* (June 7, 2024), https://www.justice.gov/opa/pr/citymd-agrees-

U.S. Briefing Re: BNL Plea Agreement - 15

pay-over-12-million-alleged-false-claims-covid-19-uninsured-program. In that case, the United States alleged that for over two years, CityMD knowingly submitted false claims for payment for COVID-19 testing to the Uninsured Program, which was meant to cover the costs of COVID-19 testing for uninsured individuals. *Id*. However, the United States contended, that CityMD submitted claims and received money for individuals who had health insurance coverage and were not eligible for the program. *Id*. Once again, unlike the global criminal-civil fraud resolution here, CityMD's resolution had no criminal component and contained no substantive factual admissions of the fraudulent conduct, and contained no provision for any culpable individuals to pay any amount. *Id*.

### III. Conclusion

The proposed BNL plea agreement is just and a critical component of a just global criminal-civil fraud resolution that appropriately holds the company and the individual accountable for the fraudulent conduct. The resolution not only provides sufficient specific deterrence, requiring the payment of approximately double the amount that was fraudulently obtained, but also provides for additional general deterrence and public awareness by requiring robust factual admissions by the Defendants. Accordingly, this Court should allow the parties to proceed forward with proposed plea agreement and, by extension, the overall global criminal-civil fraud resolution of this matter.

RESPECTFULLY Submitted this 15th day of October, 2024.

Vanessa Waldref
United States Attorney

*s/ Tyler H.L. Tornabene*
Tyler H.L. Tornabene
Assistant United States Attorney

U.S. Briefing Re: BNL Plea Agreement - 16

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

<u>s/ Tyler H.L. Tornabene</u>
Tyler H.L. Tornabene
Assistant United States Attorney

U.S. Briefing Re: BNL Plea Agreement - 17