

**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Washington*

---

*300 United States Courthouse*  *(509) 353-2767*
*Post Office Box 1494*  *Fax (509) 835-6397*
*Spokane, Washington 99210-1494*

March 15, 2022

Mr. Danny Onorato  
Schertler Onorato Mead & Sears  
901 New York Avenue. NW  
Suite 500 West  
Washington, DC 20001

Mr. David Panzer  
Whiteford Taylor Preston LLP  
1800 M Street, NW  
Suite 450N  
Washington, DC 20036

Re: *United States v. HPMC,* ---- (E.D.WA)

Dear Mr. Onorato and Mr. Panzer:

On the understandings specified below, the Office of the United States Attorney for the Eastern District of Washington (the "USAO") will not criminally prosecute HPM Corporation ("HPMC") for any crimes (except for criminal tax violations, as to which this Office cannot and does not make any agreement) related to false statements provided in the course of seeking forgiveness for HPMC's PPP Loan, as described in the Statement of Facts, attached hereto as Exhibit A. The United States of America, acting through the United States Attorney's Office for the Eastern District of Washington (the "USAO") and the defendant HPM Corporation ("HPMC"), (under authority granted by its CEO), hereby enter into this Deferred Prosecution Agreement (the "Agreement"). This Agreement shall take effect upon its execution by all parties.

## THE CRIMINAL COMPLAINT

1. HPMC waives indictment and consents to the filing of a one-count criminal Complaint (the "Complaint") in the United States District Court for the Eastern District of Washington (the "Court"), charging HPMC with one count of submitting false and fraudulent claims to the United States in violation of Title 18, United States Code, Section 287, relating to the submission of the April 2021 forgiveness application for HPMC's PPP loan. A copy of the Complaint is attached hereto as Exhibit B.

Re: HPMC
March 15, 2022
Page -2-

## ACCEPTANCE OF RESPONSIBILITY

2. HPMC admits and stipulates that the facts set forth in the Statement of Facts, attached hereto as Exhibit A and incorporated herein, are true and accurate. In sum, HPMC admits that it is responsible under U.S. law for the conduct set forth in the Statement of Facts as a result of the acts of its partners, officers, employees, and agents. HPMC further agrees to demonstrate its future good conduct by complying with all laws and regulations of the United States and satisfying all of its obligations under this Agreement.

## RESTITUTION AND PENALTY OBLIGATIONS

3. As a result of the conduct described in the Complaint and the Statement of Facts, HPMC agrees to make a payment of restitution in the amount of $1,344,700.00 (the "Restitution Amount") through a separate Civil False Claims Act Settlement. Additionally, through that Civil False Claims Act Settlement, HPMC shall pay $1,344,700.00 in penalties to the United States; and Ms. and Mr. Mooers shall pay $250,000 penalties to the United States. The total settlement amount is $2,939,400.00 ("Settlement Amount").

### Restitution

4. In regard to the Restitution Amount, HPMC admits and the Department agrees that the Restitution Amount represents the approximate gross pecuniary loss to the Small Business Administration as a result of the conduct described in the Statement of Facts. HPMC agrees to pay the Restitution Amount of $1,344,700.00, pursuant to the Civil False Claims Act Settlement. If HPMC fails to timely make the payment required under that agreement, interest (at the rate specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment, unless the Department, in its sole discretion, chooses to reinstate prosecution pursuant to Paragraphs 19 and 20, below.

### Penalty

5. The Department and HPMC agree that the Penalty Amount of $1,344,700.00 is an appropriate penalty in this case as to HMPC. HPMC agrees to pay this penalty through the separate Civil False Claims Act Settlement. The Department and HPMC agree that the Penalty Amount is appropriate given the facts and circumstances of this case, including the nature and seriousness of HPMC's conduct as set forth in the Statement of Facts. The Department and HPMC further agree that the Penalty Amount is final and shall not be refunded, that nothing in this Agreement shall be deemed an agreement by the Department that the Penalty Amount is the maximum penalty that may be imposed in any future prosecution, and that the Department is not precluded from arguing in any future prosecution that the Court should impose a higher penalty.

6. HPMC agrees that it will not file a claim or a petition for remission, restoration, or any other assertion of ownership or request for return relating to the payment of the Penalty Amount described above, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Penalty Amount, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

### Non-Deductibility

7. HPMC agrees that the Restitution Amount and the Penalty Amount shall be treated as non-tax-deductible amounts paid to the United States Government for, if relevant, all tax purposes under United States law. HPMC agrees that it will not claim, assert, or apply for, either directly or indirectly, a tax deduction, tax credit, or any other offset with regard to any United States federal, state, or local tax, for any portion of the $2,939,400 that HPMC has agreed to pay to the United States pursuant to this Agreement and the separate Civil False Claims Act Settlement, or for the PPP loan funds distributed by Hollie P. Mooers and Grover Cleveland Mooers to various charities.

### TERMS OF THE AGREEMENT

8. HPMC agrees that its obligations pursuant to this Agreement, which shall commence upon the signing of this Agreement, will continue for three years from the date of the Court's acceptance of this Agreement, unless otherwise extended pursuant to Paragraph 9 below (the "Deferral Period"), subject to the continuing cooperation obligations set forth below. HPMC's obligation to cooperate is not intended to apply in the event that a prosecution against HPMC by the Department is pursued and not deferred.

9. HPMC agrees that, in the event that the Department determines during the Deferral Period described in Paragraph 9 above (or any extensions thereof) that HPMC has violated any provision of this Agreement, an extension of the period of the Deferral Period may be imposed in the sole discretion of the Department, up to an additional one year, but in no event shall the total term of the deferral-of-prosecution period of this Agreement exceed four years.

10. HPMC agrees to retain an independent auditing or accounting firm to perform an independent audit of HPMC's accounting practices as they relate to expenses, distributions, salaries and expenses associated with company officers and owners, and dividends. The results of this audit, as well as all work papers, shall be provided to the Department.

11. HPMC agrees that Grover Cleveland Mooers shall step down as a Governor, and HPMC shall refrain from allowing Grover Cleveland Mooers to serve in any managerial or advisory role with HPMC, or as a principal of HPMC, as such term is defined by 48 C.F.R. § 52.209-5(a)(2), for the term of the Agreement.

12. HPMC agrees not to seek a tax benefit from the disbursement PPP loan funds distributed by Hollie P. Mooers and Grover Cleveland Mooers to various charities.

### DEFERRAL OF PROSECUTION

13. HPMC has made a commitment to: (a) accept and acknowledge responsibility for its conduct, as described in the Statement of Facts attached hereto; (b) make the payments specified in this Agreement; (c) undertake an independent audit of HPMC's financial practices and provide the results and working papers to the Department; (d) refrain from allowing Grover Cleveland Mooers to serve in any managerial or advisory role with HPMC for term of the Agreement; (e) cooperate fully with the Department, the DOE

Re: HPMC
March 15, 2022
Page -4-

OIG, and any other law enforcement agency so designated by the Department; (f) comply with the federal criminal laws of the United States (as provided herein in Paragraph 15(b)); and (g) otherwise comply with all of the terms of this Agreement. In consideration of the foregoing, the Department shall recommend to the Court that prosecution of HPMC on the Complaint be deferred for three years. HPMC agrees to waive its right to raise any defense to the statute of limitations with regard to the charge set forth in the Complaint, and agrees that the applicable statute of limitations period for any charges arising out of the conduct described in the Statement of Facts shall be tolled during the term of this agreement. HPMC shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Eastern District of Washington for the period during which this Agreement is in effect.

14. The Department agrees that if HPMC is in compliance with all of its obligations under this Agreement, the Department will, at the expiration of the Deferral Period (including any extensions thereof), seek dismissal with prejudice of the Complaint filed against HPMC pursuant to this Agreement. Except in the event of a violation by HPMC of any term of this Agreement or as otherwise provided in Paragraph 19, the Department will bring no additional charges or other civil action against HPMC relating to its conduct as described in the Complaint and the Statement of Facts attached hereto. This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than HPMC. HPMC and the Department understand that the Court must approve deferral under the Speedy Trial Act, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to defer prosecution for any reason: (a) both the Department and HPMC are released from any obligation imposed upon them by this Agreement; (b) this Agreement shall be null and void, except for the tolling provision set forth in Paragraph 19, below; and (c) if it has already been transferred to the United States, the Restitution Amount shall be returned to HPMC.

## CONTINUING COOPERATION

15. During the deferral period, HPMC shall cooperate fully, subject to applicable laws and regulations, with the Department, the DOE OIG, the SBA OIG, and any other federal law enforcement agency, including:

  a. truthfully and completely disclose all information with respect to the activities of HPMC, its partners, officers, and employees, and others concerning all such matters about which the Department inquires related to the Department's Investigation, which information can be used for any purpose, except as limited by this Agreement or by applicable law; and
  b. HPMC shall commit no violations of the federal criminal laws of the United States, or of the False Claims Act, 31 U.S.C. § 3729.

16. It is further understood that during the Deferral Period, HPMC will bring, consistent with applicable laws or regulations, to the Department's attention: (a) all criminal conduct by, and criminal investigations of HPMC or its partners, officers, and employees related to any violations of the laws of

Re: HPMC
March 15, 2022
Page -5-

the United States that come to the attention of HPMC's partners or senior management, (b) any investigation conducted by, or any civil, administrative, or regulatory proceeding brought by, any U.S. governmental authority that alleges fraud by HPMC or any other violations of the federal laws of the United States in the operation or management of HPMC's business; and (c) any credible evidence of any violation of the False Claims Act, 31 U.S.C. § 3729.

    17. Notwithstanding the Deferral Period, HPMC shall also, subject to applicable laws or regulations, continue to cooperate with the Department, and any other federal law enforcement agency designated by the Department regarding any and all matters related to the Department's Investigation until the date on which all civil or criminal examinations, investigations, or proceedings, including all appeals, are concluded, whether or not those examinations, investigations, or proceedings are concluded within the Deferral Period, including:

    a. cooperate fully with the Department and any other federal law enforcement agency designated by the Department regarding all matters related to the Department's Investigation;

    b. retain all records relating to the Department's Investigation, for a period of ten years from the end of the Deferral Period;

    c. assist the Department or any designated federal law enforcement agency in any investigation, prosecution, or civil proceeding arising out of or related to the Department's Investigation by providing logistical and technical support for any meeting, interview, grand jury proceeding, or any trial or other court proceeding;

    d. use its best efforts promptly to secure the attendance and truthful statements or testimony or information of any current or former officer, director, employee, agent, or consultant of HPMC at any meeting or interview or before any grand jury or at any trial or other court proceeding regarding matters arising out of or related to the Department's Investigation;

    e. provide testimony of a competent witness as needed to enable the Department and any designated federal law enforcement agency to use the information and evidence obtained pursuant to HPMC's cooperation with the Department before a grand jury or at any trial or other court proceeding regarding matters arising out of or related to the Department's Investigation;

    f. provide the Department, upon request, consistent with applicable law and regulations, all information, documents, records, or other tangible evidence not protected by a valid claim of privilege or work product regarding matters arising out of or related to the Department's Investigation about which the Department or any designated federal law enforcement agency inquires;

    18. Nothing in this Agreement shall require HPMC to waive any protections of the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege unless HPMC voluntarily chooses to waive any such privilege. Nothing in this Agreement shall require HPMC to violate the law of any jurisdiction in which it operates.

Re: HPMC
March 15, 2022
Page -6-

## BREACH OF THE AGREEMENT

19. It is understood that should the Department in its sole discretion determine during the Deferral Period that HPMC: (a) has knowingly given materially false, incomplete or misleading information either during the Deferral Period or in connection with the Department's investigation of the conduct described in the Complaint or Statement of Facts; (b) committed any crime under the federal laws of the United States subsequent to the execution of this Agreement; or (c) otherwise knowingly violated any provision of this Agreement, HPMC shall, in the Department's sole discretion, thereafter be subject to prosecution for any federal criminal violation, or suit for any civil cause of action, including but not limited to a prosecution or civil action based on the Complaint, the Statement of Facts, the conduct described therein, or perjury and obstruction of justice. Any such prosecution or civil action may be premised on any information provided by or on behalf of HPMC to the Department at any time. In any prosecution or civil action based on the Complaint, the Statement of Facts, or the conduct described therein, it is understood that: (a) no charge would be time-barred provided that such prosecution is brought within the applicable statute of limitations period (subject to any prior tolling agreements between the Department and HPMC), and excluding the period from the execution of this Agreement until its termination; and (b) HPMC agrees to toll, and exclude from any calculation of time, the running of the statute of limitations for the length of this Agreement starting from the date of the execution of this Agreement and including any extension of the period of deferral of prosecution pursuant to Paragraph 9 above. By this Agreement, HPMC expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of HPMC's counsel.

20. It is further agreed that in the event that the Department, in its sole discretion, determines that HPMC has knowingly violated any provision of this Agreement, including by failure to meet its obligations under this Agreement: (a) all statements made by or on behalf of HPMC to the Department, including but not limited to the Statement of Facts, or any testimony given by HPMC or by any agent of HPMC before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the Department against HPMC; and (b) HPMC shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of HPMC before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

21. HPMC, having admitted to the facts in the Statement of Facts, agrees that it shall not, through its attorneys, agents, or employees, make any public statement, in litigation or otherwise, contradicting the Statement of Facts or its representations, agreements and stipulations in this Agreement. Any such contradictory statement by HPMC, through its present or future attorneys, partners, agents, or employees

Re: HPMC
March 15, 2022
Page -7-

authorized to speak on behalf of HPMC, shall constitute a violation of this Agreement, and HPMC thereafter shall be subject to prosecution as specified in Paragraphs 19 and 20, above, or the Deferral Period shall be extended pursuant to Paragraph 9, above. The decision as to whether any such contradictory statement will be imputed to HPMC for the purpose of determining whether HPMC has violated this Agreement shall be within the sole discretion of the Department. Upon the Department's notifying HPMC of any such contradictory statement, HPMC may avoid a finding of violation of this Agreement by repudiating such statement both to the recipient of such statement and to the Department within 48 hours after having been provided notice by the Department. HPMC consents to the public release by the Department, in its sole discretion, of any such repudiation. The Department agrees that nothing in this Agreement in any way prevents HPMC or its partners from taking good-faith positions, raising defenses, or asserting affirmative claims that are not inconsistent with the Statement of Facts in any civil proceedings, investigations, or litigation involving private parties or government entities, including non-U.S. litigations or non-U.S. investigations. Nothing in this Agreement is meant to affect the obligation of HPMC or its partners, officers, directors, agents or employees to testify truthfully to the best of their personal knowledge and belief in any proceeding.

22. HPMC agrees that it is within the Department's sole discretion to choose, in the event of a violation, the remedies contained in Paragraphs 19 and 20, above, or instead to choose to extend the period of deferral of prosecution pursuant to Paragraph 9. HPMC understands and agrees that the exercise of the Department's discretion under this Agreement is unreviewable by any court. Should the Department determine that HPMC has violated this Agreement, the Department shall provide prompt written notice to HPMC of that determination and provide HPMC with a 30-day period from the date of receipt of notice in which to make a presentation to the Department to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the period of deferral of prosecution, including because the violation has been cured by HPMC.

## ADDITIONAL PROVISIONS

### Limits of the Agreement

23. It is understood that this Agreement is binding on the Office but does not bind any other components of the Department of Justice, any other Federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, if requested by HPMC or its attorneys, the Department will bring to the attention of any such agencies, including but not limited to any regulators, as applicable, this Agreement, the cooperation of HPMC, and HPMC's compliance with its obligations under this Agreement.

### Public Filing

24. The Department and HPMC agree that, upon the submission of this Agreement (including the Statement of Facts and other attachments) to the Court, this Agreement and its attachments shall be filed publicly in the proceedings in the United States District Court for the Eastern District of Washington.

25. The parties understand that this Agreement reflects the special facts of this case and is not intended as precedent for other cases.

## Execution in Counterparts

26. This Agreement may be executed in one or more counterparts, each of which shall be considered effective as an original signature.

## Integration Clause

27. This Agreement sets forth all the terms of the Deferred Prosecution Agreement between HPMC and the Department. This Agreement supersedes all prior understandings or promises between the Department and HPMC. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the USAO, HPMC's attorneys, and a duly authorized representative of HPMC.

Best Regards,

*Vanessa R. Waldref*
United States Attorney

Daniel H. Fruchter
Tyler H.L. Tornabene
Assistant United States Attorneys
Frieda Kay Zimmerman
Special Assistant United States Attorney
Counsel for the United States of America

AGREED AND CONSENTED TO:

HPMC

DATED: March 15, 2022    *Hollie Mooers*
Hollie P. Mooers
President and CEO
HPMC

DATED: 3/15/2022
David Panzer
Whiteford Taylor Preston LLP
Counsel for HPMC

**Attachment A – Statement of Facts**

## STATEMENT OF FACTS

The following Statement of Facts is incorporated by reference as part of the settlement agreement (the "Agreement") between the United States of America, acting through the United States Attorney's Office for the Eastern District of Washington and on behalf of the Department of Energy and the Small Business Administration (collectively the "United States"); HPM Corporation ("HPMC"); Hollie P. Mooers ("Ms. Mooers") and Grover Cleveland Mooers ("Mr. Mooers") (HPMC, Ms. Mooers, and Mr. Mooers collectively referred to hereinafter as "Defendants"). The United States and Defendants agree that the following facts are true and correct. Nothing in this Statement of Facts, however, is or will be construed to be an admission of criminal liability by the Defendants, except to the extent provided by the separate Deferred Prosecution Agreement (DPA) between the United States Attorney's Office for the Eastern District of Washington (the "USAO") and HPMC, *United States v. HPMC*, ---- (E.D.WA). The relevant time period for the Statement of Facts is March 1, 2020, to March 1, 2022.

## RELEVANT ENTITIES

1. Defendant HPMC is a Washington corporation with its principal place of business in Kennewick, Washington, specializing in occupational medicine.

2. Hollie P. Mooers ("Ms. Mooers") is the registered agent for HPMC, and both Ms. Mooers and Grover Cleveland Mooers ("Mr. Mooers") serve as HPMC's

**Attachment A – Statement of Facts**

governors. Additionally, Ms. Mooers serves as President and Chief Executive Officer (CEO) of HPMC.

3. The United States Department of Energy ("DOE") oversees environmental remediation efforts at the Hanford Site in southeastern Washington State. In 2012, HPMC was awarded the Hanford Occupational Medicine Services prime contract to provide occupational medical and health services to workers at the Hanford Site, located in Southeastern Washington state. Most recently, in 2018, HPMC was competitively re-awarded the Hanford Occupational Medicine Services contract, under Department Contract No. 89303919DEM000005.

4. The United States Small Business Administration ("SBA") is a federal agency dedicated to small businesses that provides counseling, capital, and contracting expertise. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, the SBA received authority to temporarily guarantee loans under a new 7(a) loan program.

**PAYCHECK PROTECTION PROGRAM BACKGROUND**

5. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was enacted on March 27, 2020, to provide over $2 trillion of economic relief to workers, families, small businesses, industry sectors, and other levels of government that have been hit hard by the public health crisis created by the Coronavirus (COVID-19). Among the provisions contained in the CARES Act are provisions authorizing the

**Attachment A – Statement of Facts**

Small Business Administration (SBA) to temporarily guarantee loans under a new 7(a) loan program titled Paycheck Protection Program ("PPP").

6. This SBA-backed loan program was designed to help businesses keep their workforce employed during the COVID-19 crisis. Under the PPP, borrowers received loans to cover payroll costs and certain eligible nonpayroll costs. A borrower could apply for forgiveness once all loan proceeds for which the borrower was requesting forgiveness have been used. Borrowers could apply for forgiveness at any time up to the maturity date of the loan. If borrowers did not apply for forgiveness within 10 months after the last day of the covered period, then PPP loan payments were no longer deferred, and borrowers would begin making loan payments to their PPP lender. Loans guaranteed under the PPP were 100 percent guaranteed by SBA, and the full principal amount of the loans could in some circumstances qualify for loan forgiveness.

7. A company was eligible for a PPP loan if it has 500 or fewer employees whose principal place of residence is in the United States or was a business that operates in a certain industry and met the applicable SBA employee-based size standards for that industry, and was in operation on February 15, 2020.

8. In order to obtain a PPP loan, each applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues. Each applicant was also required to certify

**Attachment A – Statement of Facts**

that all the information in the application was true and correct to the best of the applicant's knowledge.

9. Under the PPP loan program, the maximum loan amount is the lesser of $10 million or an amount calculated using a payroll-based formula specified in the Act. The entire loan amount may be forgiven. However, for 100% forgiveness, at least 60% of loan must be used on payroll costs, and the remaining 40% may be spent on interest on mortgages, rent, and utilities in the 24 weeks post loan disbursement.

10. The PPP loans were not directly distributed through the SBA. Rather, the SBA approved 7(a) lenders to make PPP loans on a delegated basis. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. The SBA maintained the power to exercise authority over PPP loan administration.

**The Investigation**

11. In August 2021, the DOE OIG received a complaint from a Department Official alleging that HPMC had applied for and received a PPP loan in the amount of $1,344,700, and subsequently had the total loan amount fraudulently forgiven. An investigation was initiated and revealed the following.

12. On April 3, 2020, HPMC, through Grover Cleveland Mooers, applied for a PPP loan through Community First Bank. This application was submitted through the SBA "E-Tran server," located in Sterling, VA.

**Attachment A – Statement of Facts**

13. On the Borrower Application Form, Mr. Mooers certified, on behalf HPMC, that the, "*current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant*" and that "*the funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.*"

14. This loan was approved and the SBA assigned PPP loan number "7352397001." Community First Bank handled this loan on a delegated basis from the SBA. Community First Bank submitted disbursement details for this loan into the SBA E-Tran system located in Sterling, VA.

15. On April 17, 2020, a PPP loan of $1,344,700 was deposited into HPMC's Business Bank Account. After deposit of the PPP loan was made, the same day an inter-bank transfer of $1,344,700 was made from HPMC's Business Bank Account to HPMC's Business Premium Money Market Account. The sum of $1,344,700 remained in the money market account until July 1, 2021.

16. The coverage period of the loan, during which HPMC was required to use the funds for authorized purposes in order to receive forgiveness, was from April 17,

**Attachment A – Statement of Facts**

2020, through September 30, 2020. However, HPMC did not use the PPP loan proceeds to maintain payroll or for other covered business expenses during the loan coverage period, or at any point after.

17. On April 6, 2021, Mr. Mooers, on behalf of Ms. Mooers and HPMC, submitted a PPP Loan Forgiveness Application, Form 3508EZ, to the SBA through a SBA cloud-based platform (Summit) through the AWS GOVcloud server located in Oregon, as well as to Community First Bank.

18. On the loan forgiveness application, HPMC certified, through Mr. Mooers, that "*the dollar amount for which forgiveness is requested… was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures).*"

19. HPMC further certified, through Mr. Mooers, that "*[t]he Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.*"

20. HPMC also certified, through Mr. Mooers, that "*[t]he information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly*

**Attachment A – Statement of Facts**

*making a false statement to obtain forgiveness of an SBA guaranteed loan is punishable under the law....*"

21. HPMC also certified, through Mr. Mooers, that "*I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.*"

22. On April 13, 2021, based in part on the certification that the dollar amount for which forgiveness was being requested was used to pay business costs eligible for forgiveness such as payroll, SBA forgave HPMC's PPP loan of $1,358,184.35 principal of the loan ($1,344,700), plus the interest ($13,484.35) in full.

23. The SBA issued a "Notice of Paycheck Protection Program Forgiveness Payment," and on April 14, 2021, the forgiven amount of $1,358,184.35 was transmitted by the SBA from the Denver Finance Center in Denver, CO, and routed through the Financial Management Service system located in Sterling, VA, before proceeding to Community First Bank in Kennewick, WA. The SBA also paid a lender fee to Community First Bank of $40,341.00.

24. On April 14, 2021, the SBA Denver Finance Center located in Denver, Colorado created and certified the payment file and transmitted the file to the U.S. Treasury data processing site in Kansas City, Missouri (KROC). KROC sent the file to the National Payment Center of Excellence (NPCE), also located in Kansas City, Missouri. The NPCE then sent the payment authorization to the Federal Reserve

**Attachment A – Statement of Facts**

Bank (FRB) in East Rutherford, New Jersey. Finally, the FRB submitted an ACH payment to Community First Bank in Kennewick, Washington.

25. From the date of the loan application on April 3, 2020, to the date of the forgiveness application on April 6, 2021, the Department maintained payments to HPMC under the Contract No. 89303919DEM000005.

26. HPMC, through Mr. Mooers, certified to the SBA that the PPP Loan funds were used for authorized purposes and were thus eligible for forgiveness. This certification was knowingly false. This false certification was material.

27. On July 1, 2021, the sum of $1,344,700 was transferred from HPMC's Business Premium Money Market Account to Mr. and Ms. Mooers' personal Community Bank Checking Account.

28. A subsequent OIG audit identified that HPMC had obtained a PPP loan and OIG Audits contacted HPMC officials regarding the PPP loan. In a response questioning from OIG Audit, an HPMC official confirmed on August 2, 2021, that "*the loan was never used to cover any business operations to include payroll or other facility expenses*."

29. On September 14, 2021, HPMC officials represented that a third-party consultant, "Cornerstone Wealth Strategies," was used to distribute the PPP loan funds to various charities and that "*the charities were not handled through HPMC and were done as personal donations outside of HPMC. The full amount of the loan*

**Attachment A – Statement of Facts**

*was sent to Cornerstone Wealth Strategies to disburse to the charities directly. As previously stated, at no time did HPMC use any of those funds to cover CARES Act 3610 related expenses.*"

30. On November 4, 2021, HPMC Employee Number 1 for HPMC further confirmed to DOE OIG that HPMC applied for the PPP loan, the Department continued to pay for contract services HPMC performed through the coronavirus pandemic, the PPP loan proceeds were not used for payroll related expenses, the PPP loan sat in the bank account and was not used until July 2021 when the loan proceeds were transferred out of the HPMC bank account, and the PPP loan proceeds were donated to charity through personal contributions by the Mr. and Ms. Mooers and not HPMC.

31. On November 4, 2021, HPMC Employee Number 2 for HPMC also confirmed to DOE OIG that the PPP loan was not used for payroll related expenses, the Department continued to pay HPMC for contract services performed, and the PPP loan proceeds were donated to charity.

32. HPMC continued to receive full payment under their preexisting prime contract with the Department during the time in question. In fact, because HPMC is the on-site Occupational Health provider for the Department's Hanford Site, HPMC's business with the Department grew due to the coronavirus pandemic as

**Attachment A – Statement of Facts**

they were awarded additional contract task orders related to coronavirus testing and vaccine administration.

33. HPMC, through Mr. Mooers, knowingly provided materially false statements to the SBA in support of HPMC's application for loan forgiveness. HPMC, through Mr. Mooers, falsely certified that the loan's proceeds were utilized for covered HPMC business-related expenses and that the loan was eligible for forgiveness when it was not.

34. These materially false representations made to the SBA caused the SBA to forgive the $1,358,184.35, principal of the loan ($1,344,700) plus the interest of 1% ($13,484.35) PPP loan in its entirety. Furthermore, upon forgiveness of the PPP loan, Mr. Mooers and Ms. Mooers transferred the sum value of the $1,344,700 PPP loan into their personal checking account where they utilized the government funds for non-covered PPP loan related expenses.